## *In re* AMOS MARTIN, *Petitioner.*

No. 16,316.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW — *Sale of Grain — Deduction from Actual Weight—Sale in a Foreign State.* Chapter 525 of the Laws of 1905, providing that sales of grain, seed, hay and coal shall be deemed to be made on the basis of the actual weight thereof, and that any purchaser of such commodities who, without express agreement with the seller, shall deduct any amount from the actual weight and withhold payment therefor under a claim of right by virtue of custom or board-of-trade rule shall be guilty of a misdemeanor and fined, has no application to a deduction and withholding of payment occurring in a settlement between purchaser and seller made in a foreign state.

2. CONTRACTS—*Sales—Place of the Contract.* The owner of a car-load of wheat in Kansas consigned it to a member of the board of trade in Kansas City, Mo., for sale on the floor of the board. The grain was sold there, and the bill of lading was there delivered to the purchaser, who was also a member of the board, and who ordered the grain stored in his elevator in Kansas City, Wyandotte county, Kansas. The wheat was weighed in Kansas by the state weigher, and a certificate of the true weight was sent to the purchaser in Missouri. Contrary to the Kansas statute, the rules of the Kansas City, Mo., board of trade allow a deduction of 100 pounds from the true weight of each car of wheat. Settlement for the wheat was made on that basis, and the price was paid at the board of trade in Kansas City, Mo. The wheat did not leave the state of Kansas at any time. *Held,* the sale was made in the state of Missouri.

3. CRIMINAL LAW—*Jurisdiction.* The purchaser in the transaction described can not be prosecuted in Wyandotte county for a violation of the Kansas statute.

Original proceeding in *habeas corpus.* Opinion filed May 8, 1909. Petitioner discharged.

*Frank Hagerman, Kimbrough Stone,* and *A. L. Berger,* for the petitioner.

*Fred S. Jackson,* attorney-general, for the respondent.

The opinion of the court was delivered by

BURCH, J.: An information was filed in the district court of Wyandotte county charging Amos Martin with a violation in that county of chapter 525 of the Laws of 1905, which reads as follows:

"AN ACT to prevent fraudulent practices connected with the purchase and sale of grain, seed, hay, or coal, and providing a penalty for the violation of the same.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. Every sale of grain, seed, hay or coal shall be deemed to be made on the basis of the actual weight thereof, unless a different basis is established by the express agreement of the parties to the transaction. Any purchaser of grain, seed, hay or coal who, without express agreement with the seller thereof, shall knowingly deduct any quantity or amount from the actual weight or measure of the article purchased, and withhold payment therefor under claim of right so to do by reason of any custom, rule of a board of trade or any other pretense whatsoever, shall be deemed guilty of a misdemeanor, and subject to a fine of not less than twenty-five dollars nor more than one hundred dollars for each and every offense. No agent or broker selling grain, seed, hay or coal for the owner thereof shall be presumed to have authority to sell any grain, seed, hay or coal on a basis other than that of the actual weight or quantity thereof, but express authority to allow any deduction must be proved.

"SEC. 2. In case any purchaser of grain, seed, hay or coal shall deduct any amount from the actual weight or measure thereof, and shall knowingly withhold from the seller the purchase-price of the quantity so deducted, without the express agreement of the seller thereof, such seller may recover from such purchaser three times the amount so withheld, together with reasonable attorney's fees, to be taxed in each court in which the action may be brought or to which an appeal may be taken."

The petitioner was arrested, and while in custody made application for his discharge on a writ of *habeas corpus.* The cause is submitted upon the following agreed facts:

"The petitioner, Amos Martin, on the 9th day of

*In re* Martin.

January, 1909, in Kansas City, Mo., being a member of the board of trade of Kansas City, Mo., bought on the floor of the board of trade of Kansas City, Mo., a car-load of wheat weighing 60,000 pounds. The bill of lading covering said grain so purchased was later on the same day delivered to him in Kansas City, Mo.

"This car-load of grain had been shipped from Salina, Kan., for sale on the floor of the board of trade of Kansas City, Mo., to a commission man, who was also a member of the said board of trade of Kansas City, Mo., where it was finally purchased by Amos Martin.

"All sales on the floor of the board of trade of Kansas City, Mo., are made under the rules of said board, one of which permits the purchaser to deduct 100 pounds from the weight of each car-load for the purpose of covering shortage through the presence of dirt and foreign matter in the grain and car. The commission man who sold the grain, and Amos Martin, who purchased the same, both understood the sale was being made subject to this rule, both therefore assented thereto, and the price, terms and every other detail of the sale were agreed upon. When Martin paid for the grain in Kansas City, Mo., it was on the basis of 59,900 pounds.

"Said Amos Martin was, on the 9th day of January, 1909, the owner and operator of an elevator in Wyandotte county, Kansas, and said car of grain was ordered by him to be stored in his elevator, and after weighing by the state weigher at said elevator the state weighing department delivered to Martin, in Kansas City, Mo., the actual weight of the car-load of grain. Thereafter both said dockage and payment for the grain to the commission man were made in the office of the board of trade of Kansas City, Mo., in Kansas City, Mo."

The argument has taken a wide range through the fields of constitutional law, interstate commerce and the conflict of laws, but the solution of the question involved is relieved from difficulty by attending carefully to what the law in question undertakes to punish. The act purports to deal with personal practices, and not with the corporal relations of movable things occupying a definite portion of space. No attempt is made to bind commodities themselves by any kind of condition

or limitation or to regulate or govern in any way the thing bargained for in the sense of a *res* having a situs within the local jurisdiction.

The fraudulent weighing of specified commodities is not the burden of the act. Actual weight may be ascertained anywhere, by any means, and at any time, either before or after title has passed. It may have been established in some way to the satisfaction of the parties while the property was beyond the borders of the state and before the seller acquired title. The law does not begin to operate until after the true weight has been finally fixed, and then it affects the subsequent conduct of the purchaser, not in his relation to the commodity itself, but in the discharge of his obligation to the person who sold. The deduction forbidden is not a concrete physical act done in relation to the property and does not depend upon the locality in which the property is situated. The entire mass of the article is actually sold and actually delivered. The deduction is merely a mental operation resulting in a theoretical diminution for the purpose of arriving at a basis of settlement. The feat is performed nowhere except in the minds of the contracting parties.

There is no reference in the act to sales of grain, seed, hay or coal located in this state. The computation of price on a fictitious basis and the withholding when settlement is made of a portion of the true price because of the false assumption is the practice condemned. This practice may be indulged whether the commodity sold be at the time on one side or the other of the imaginary line separating Kansas City, Kan., from Kansas City, Mo. If the owner of mines in Colorado should sell coal in Colorado at true mine weights to a Topeka dealer, to be paid for at Topeka on presentation of the bills of lading, and the purchaser should make a deduction from the true weight and withhold payment therefor under a local custom or trade rule, he would subject himself to all the penalties of the act.

Delivery in this state is not a material factor.   The act applies to every sale, and delivery is not essential to a completed sale unless made so by agreement.   It is. elementary law that an offer may be accepted and a bargain struck so that the contract of sale becomes ab- solute and title passes without either delivery or pay- ment of price.   If the property then be accidentally destroyed while in the possession of the seller the loss. falls upon the buyer, and the price may be recovered the same as if delivery had occurred.   In such a case the statute would apply and settlement on the basis of actual weight without deduction would be necessary. If a Kansas grain dealer should contract for wheat to be delivered to him in Chicago, and after receiving the grain there he should make settlement for it at his office in Kansas on the basis of a deduction according to the Chicago board-of-trade rules, he would subject himself to all the penalties of the act.

The passing of title is not a matter of consequence so that the legislature may be said to have been con- cerned with property rights in things with a local situs. No doubt executory contracts made in violation of the act would not be enforced, but executed contracts are affected no further than that the seller may recover treble the portion of the price withheld.   The title to · grain delivered pursuant to the sale is not disturbed.

The statute is leveled at the conduct of a purchaser toward a seller in the matter of figuring and paying the sum due on a personal obligation, and criminality no more depends upon the situs of the property or of the various features of the transaction giving rise to the obligation than if it were a statute to punish short- changing.   This being true, all questions of the conflict of laws go out of the case.   We have an ordinary crim- inal statute without any extraterritorial aspect what- ever, and since all the conduct giving rise to the in- formation filed in Wyandotte county was exhibited in

*In re* Martin.

the state of Missouri the petitioner is entitled to a discharge from further custody.

For the sake of argument let it be conceded that the legislature intended the statute should apply, and had the power to make it apply, to settlements made outside the state for the price of sales seated in Kansas. Where was this sale made? The ultimate criterion is the place where the last act was performed necessary to consummate the contract. (2 Whart. Conflict of Laws, 3d ed., § 422*a*.) The offer and acceptance both occurred in Missouri. The wheat was not physically in the possession of the seller. He had the right to possession, but the grain was actually in the custody of a common carrier, as bailee. The wheat was represented by a bill of lading, which for general commercial purposes was the equivalent of the property itself. When the seller delivered this bill of lading to the purchaser he performed the last act required of him. The purchaser accepted the bill of lading for the grain itself and took the responsibility of acquiring actual possession from the carrier. He could call upon the seller for nothing more. When the purchaser paid for the wheat he performed the last act required of him. Therefore every legal constituent of this sale from first to last was seated in Missouri, and the district court of Wyandotte county has no jurisdiction over any one of them.

Other questions raised and argued need not be considered. The petitioner is discharged.